MARTIN A. CLAYMAN, EXECUTOR (ESTATE OF JOSEPH
PROCHASKA) *v.* CLAIRE G. PROCHASKA ET AL.
(2473)

DANNEHY, C.P.J., HULL and BORDEN, Js.

Argued May 1—decision released August 21, 1984

*Dean F. Radke,* for the appellant (plaintiff).

*Andrew J. O'Keefe,* with whom was *Denise M. Phelan,* for the appellee (named defendant).

DANNEHY, C.P.J. This is an action for a declaratory judgment determining the ownership of four bank accounts. The parties stipulated that the accounts were joint accounts with the right of survivorship, issued in the names of Joseph Prochaska and Claire G. Prochaska.

Claire Guerard and Joseph Prochaska were married on July 17, 1965. Their marriage was dissolved on July 19, 1977. The dissolution decree incorporated a prior separation agreement which provided that Claire Prochaska would hand over and transfer to Joseph Prochaska their joint savings accounts.

When the marriage was dissolved on July 19, 1977, the seven passbooks evidencing the joint savings accounts were handed over and transferred to Joseph Prochaska's attorney and shortly thereafter to Joseph Prochaska himself.

Between the time that the passbooks were transferred to Joseph Prochaska and the time of his death on April 21, 1979, he closed three of the accounts. The other four accounts[1] remained in the names of Joseph Prochaska and Claire G. Prochaska and in form were to be paid to any one or the survivor of them.

---

[1] The four accounts were: Hartford National Bank and Trust Company, No. 004-1-08435-1, converted to No. 007-1-06168-3, having a balance of $19,724.80 as of July 10, 1979; Charter Oak Bank and Trust Company, No. 03900122-9, having a balance of $20,835.49 as of January 22, 1980; Hartford Federal Savings and Loan Association, No. 16-101382-6, having a bal-

After Joseph Prochaska died, his executor, the plaintiff here, demanded that Claire G. Prochaska, the defendant,[2] execute the documents necessary to transfer the four joint accounts to the decedent's estate. The defendant refused. The plaintiff brought this action for a declaratory judgment to determine the ownership of the four accounts. The trial court concluded that the decedent's maintenance of the accounts in question in joint names following the dissolution of his marriage was an intentional act on his part to bring about a postmortem gift of these accounts to the defendant, his former wife. Whereupon it rendered judgment declaring that the defendant is the absolute owner of the four bank accounts in question and entitled to all of the money in the accounts. The plaintiff appealed[3] from that judgment.

The main contention of the plaintiff on appeal is that the trial court erred in finding that his decedent's failure to remove his former wife from the accounts prior to his death constituted an intentional act by him to bring about a postmortem gift of the savings accounts to his former wife. Although this finding could perhaps have been more aptly put, we read it as no more than a finding that Joseph Prochaska intended to maintain the accounts so that they would pass on his death to the defendant under General Statutes § 36-3.

Connecticut General Statutes § 36-3, which authorizes joint deposits and accounts, provides, in relevant part, that the making of a deposit in this state in any

ance of $20,306.49 as of July 3, 1979; and Colonial Bank (formerly Constitution Bank), No. 940-068-2, having a balance of $20,598.63 as of July 3, 1979.

[2] Claire G. Prochaska, Hartford National Bank and Trust Company, Charter Oak Bank and Trust Company and Hartford Federal Savings and Loan Association were originally named as defendants. The action was withdrawn as to the three banks.

[3] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

state bank and trust company or national banking association or the issuance of an account in this state by any federal savings and loan association, in the names of two persons and in form to be paid to any one or the survivor of them, shall, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, be prima facie evidence, in any action or proceeding respecting the ownership of such deposit or account, of the intention of all the named owners therein to vest title to such deposit or account in the survivor.[4] The plaintiff argues that this section does not apply in a case like this one where a dissolution of the marriage between the joint tenants occurred after the issuance of the accounts. The statute, it will be observed, does not establish conclusive evidence of intent. It simply provides prima facie evidence of the intention of the named owners to vest title to the deposit or account in the survivor, and further provides that the prima facie evidence can always be overcome by proof of fraud or undue influence or other clear and convincing evidence to the contrary; we may not add

---

[4] General Statutes § 36-3 provides: "Sec. 36-3. JOINT DEPOSITS AND ACCOUNTS. (1) When a deposit has been made in this state in any state bank and trust company, national banking association, savings bank or industrial bank or an account has been issued in this state by any savings and loan association or federal savings and loan association or credit union, in the names of two or more persons and in form to be paid to any one or the survivor, or survivors, of them, such deposit or account and any additions thereto made by any of such persons after the making or issuance thereof, together with all dividends or interest or increases credited thereon, shall be held for the exclusive use of such persons and may be paid to any of them during the lifetime of all of them or to the survivor or survivors after the death of one or more of them, and such payment and the receipt or acquittance of the person or persons to whom such payment is made shall be a valid and sufficient release and discharge for all payments so made. The making of a deposit or issuance of an account in such form shall, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, be prima facie evidence, in any action or proceeding respecting the ownership of, or the enforcement of the obligation created or represented by, such deposit or account, of the intention of all of the named owners thereof to vest title to such deposit or account, including all additions and increments thereto, in such survivor or survivors."

to the statutory requirements another requirement, namely, that the statute has no application in a case such as this where a dissolution of the marriage between the joint owners occurred after the making of the deposit or the issuance of the account.

The evidence presented at trial disclosed that Joseph Prochaska was sixty-nine years of age at the time of his retirement. He was a chemical engineer who had held several responsible positions at Heublein, Inc., in operations, research and development, and had served as a director of the corporation prior to his death.

After the dissolution of the marriage, the decedent showed ongoing concern for the financial well-being of his former wife. Without any obligation to do so, he gave the defendant $300 each month until he died. In 1977, he sent her as a gift at Christmas a check in the amount of $1000. He also volunteered to pay a portion of her 1977 income taxes, having returned to her a $2000 check which she had sent to him. Prochaska's concern was further demonstrated by the execution of a will, on the very day of the dissolution decree, in which he left his entire estate to the defendant.[5]

Interest on the four savings accounts was paid quarterly. The interest checks, payable to both Joseph and Claire Prochaska, were sent to Claire Prochaska who, in turn, forwarded them to her former husband. As the trial court pertinently noted, the interest checks served as a quarterly reminder to Joseph Prochaska that the accounts were held jointly. When asked by Claire Prochaska if he intended to change over the accounts, Joseph Prochaska said, "[n]o, no, no."

---

[5] The will was subsequently changed and, in its final form, divided his estate between his nurse and his daughter by a former marriage.

The issue of intent is a question of fact, and the trier's determination as to intent is not reviewable unless the conclusion drawn is one which cannot reasonably be made. *Bergen* v. *Bergen,* 177 Conn. 53, 57, 411 A.2d 22 (1979). As stated previously, after the dissolution of his marriage, Joseph Prochaska received the passbooks and had unlimited and unrestricted access to the funds in the joint accounts. He closed three of them, but did nothing to change the ownership of the four[6] in question.

The trial court found facts from which the conclusions are inevitable that neither fraud nor undue influence was present, and there was nothing whatsoever in the evidence which tended even remotely to constitute the clear and convincing proof needed to overcome the prima facie evidence of intent supplied by General Statutes § 36-3. We are unable to change the facts as found. The facts unmistakably disclose that Joseph Prochaska made deposits in this state in a state bank and trust company and in a national banking association and an account was issued by a federal savings and loan association in the names of Joseph Prochaska and Claire G. Prochaska and in form to be paid to either or the survivor, that Joseph Prochaska died and that the defendant, Claire G. Prochaska, was the survivor. Thus, General Statutes § 36-3 controls, and title to the accounts vested in the defendant upon Joseph Prochaska's death.

The plaintiff also argues that the defendant never complied with the separation agreement because she never extinguished her rights in the joint savings accounts. The separation agreement required the defendant to "hand over and transfer the joint savings accounts" to the husband. "The expressed intention of the parties to a contract is to be determined from

---

[6] Three weeks prior to his death, he withdrew in excess of $4100 from the account with Hartford Federal Savings and Loan Association.

the language used, interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Buckley* v. *Buckley,* 144 Conn. 403, 409, 133 A.2d 604 (1957). "The question is not what intention existed in the minds of the parties but what intention is expressed in the language used." *Ives* v. *Willimantic,* 121 Conn. 408, 411, 185 A. 427 (1936). "The words they employed must be accorded their common meaning and usage where they can be sensibly applied to the subject matter of the contract." *Beach* v. *Beach,* 141 Conn. 583, 588–89, 107 A.2d 629 (1954); *Cocco* v. *Cocco,* 166 Conn. 37, 347 A.2d 72 (1974). The fact that the defendant handed over and transferred the passbooks representing the joint savings accounts is unchallenged.

When the dissolution decree was entered, the passbooks were physically delivered to the decedent's attorney. They were subsequently delivered to the decedent who retained possession of them until his death. While in his possession, the passbooks furnished him with absolute authority to close the joint savings accounts and to transfer the funds to new accounts either bearing his name only, or in whatever form he might choose, thereby extinguishing any interest the defendant had in the joint savings accounts. He did none of these things. Under these circumstances, it could hardly be said that the defendant did not comply fully with the transfer provision requiring only that she "hand over and transfer the joint savings accounts" to the decedent.

Finally, the plaintiff contends that Claire Prochaska is equitably estopped from asserting ownership of the accounts. He appears to base this claim on the premise that Claire Prochaska induced Joseph Prochaska to enter into the separation agreement by implicitly representing that she would extinguish all of her rights to the joint savings accounts. According to the plaintiff, this implicit representation is memorialized in para-

graphs five and six of the separation agreement. Any reliance on paragraph five, which deals with alimony and support, is obviously misplaced. Paragraph six relates to the mutual release of claims between the parties. That paragraph specifically limits the discharge to claims that either of the parties had against the other as of the date of the execution of the agreement.[7] The defendant's claim of ownership is not against her former husband or his estate and consequently is outside the purview of the separation agreement's release of claims provision.

"Estate" is defined as "the sum total of the property formerly owned by the decedent which, after his death, remains subject to administration and distribution." Locke and Kohn, Connecticut Probate Practice § 375. As the trial court correctly stated: "Since title to the joint bank accounts passes to the surviving joint tenant at the instant of death, it is not property which remains to be distributed after the first joint tenant's death and is therefore not part of his estate." This finding fully disposes of the plaintiff's estoppel argument.

There is no error.

In this opinion the other judges concurred.

---

[7] That paragraph, entitled "Mutual Release of Claims," provides that "Except for the obligations, promises and agreements herein set forth and to be performed by the parties hereto, which are hereby expressly reserved, each of the parties hereto hereby for himself, and herself, and for his or her legal representatives, forever releases and discharges the other of them and his or her heirs and legal representatives from any and all actions, suits, debts, claims, demands, and obligations whatsoever, both in law and in equity, except any cause of action for dissolution, which either of them ever had, now has or may hereafter have against the other, upon or by reason of any matter, cause or thing to the date of the execution of this Agreement."