## CHARLES RACCIO *v.* LORI LYNN RACCIO

SUPERIOR COURT       JUDICIAL DISTRICT OF       FILE NO. 251135
NEW HAVEN

Memorandum filed December 11, 1987

*Cohen & Gordon,* for the plaintiff.
*Merle Berke-Schlessel,* for the defendant.

DeMAYO, J. This matter came to the court as a "limited contested" case, with the parties stipulating that the marriage had broken down irretrievably. The parties also agreed that the sole trial issue was whether alimony and/or property should be awarded to the defendant pursuant to General Statutes §§ 46b-81 and 46b-82.

Since the legal issue involved is one of first impression in Connecticut, the court ordered briefs to be filed. Ordinarily, a decision on the law would delay a dissolution of the marriage. Therefore at the request of the parties, at the conclusion of the trial, the court dissolved the marriage on the grounds of irretrievable breakdown and permitted the defendant to resume her maiden name.

The legal question arose in the following context. Shortly after the parties were married, the plaintiff was the victim of an industrial accident at his place of employment. The injuries he received rendered him totally and permanently disabled. As a further consequence of his injuries, the plaintiff also suffered psychological damage. In addition to seeking remedies

under the Workers' Compensation Act, the plaintiff has brought suit against the alleged tortfeasor on a product liability theory. This case is presently pending in the Superior Court at New Haven.

At trial, the defendant offered evidence of this pending lawsuit and requested that alimony and/or property be awarded from the proceeds of the litigation since the plaintiff was virtually insolvent and existed on his compensation award. The plaintiff objected to the admission of that evidence and the court overruled the objection, pending a determination of the issue after argument and briefs.

The first question for the court to decide is whether an unliquidated personal injury action may be the subject of an award pursuant to General Statutes § 46b-81, which provides in pertinent part: "At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the *estate* of the other. . . ." (Emphasis added.)

## I

The plaintiff relies on the recent Supreme Court decision in *Rubin* v. *Rubin,* 204 Conn. 224, 527 A.2d 1184 (1987). In that case, the court disallowed either a property division or alimony based on a possible future inheritance stating: "We decline to adopt the position that the challenged order in the present case, involving a contingent award of *expected* property, can be upheld as a property transfer authorized by § 46b-81. As we have stated, § 46b-81 authorizes the court to assign to either spouse 'all or any part of the estate of the other,' and prescribes that, in fixing the value of such 'property,' the court shall consider, inter alia, 'the opportunity of each for future acquisition of capital assets and income.' The terms 'estate' and 'prop-

erty,' as used in the statutes, connote presently existing interests." (Emphasis in original.) Id., 230.

There is, however, a distinction between the mere expectancy of an inheritance and a pending personal injury claim, even though that claim is unliquidated. That distinction, which prevented this court from rejecting the defendant's argument out of hand, derives from the language of General Statutes § 46b-81, which refers to an award being made to one spouse from the "*estate* of the other." (Emphasis added.)

The word "estate" has consistently been used in the statutes pertaining to alimony and property awards in matrimonial matters since the early 1800s. Estate is generally used in a probate context and has been defined as "the sum total of the property formerly owned by the decedent which, after his death, remains subject to administration and distribution." *Clayman* v. *Prochaska,* 2 Conn. App. 430, 437, 479 A.2d 1214 (1984), citing 2 W. Locke & P. Kohn, Connecticut Probate Practice (1951) § 375, p. 280.

Under this definition an unliquidated tort claim would be considered part of the estate of the decedent, since the executor or administrator of his estate has title to the personal property of the decedent, including choses in action, and may sue thereon. *Lynch* v. *Skelly,* 138 Conn. 376, 379, 85 A.2d 251 (1951). It hardly merits stating that a decedent's estate does not include an expectancy of an inheritance.

The plaintiff argues in his brief that a chose in action is not property. If the plaintiff, however, were to die while his personal injury case was still pending, his estate would include it and it would, in all likelihood, be pursued by his executor or administrator. It would be inventoried in Probate Court as part of his estate. Further, a Connecticut case does state, although in

dicta, that a chose in action is property. *Commonwealth Fuel Co.* v. *McNeil,* 103 Conn. 390, 405, 130 A. 794 (1925).

Although there are a variety of decisions on this subject in other jurisdictions, the majority rule is that awards for personal injury, where the injury occurred during the marriage, are treated as marital property. 1 Valuation and Distribution of Marital Property (McCahey Ed. 1984) § 18.05 [5], pp. 18–75; *Little* v. *Little,* 74 N.C. App. 12, 16, 327 S.E.2d 283 (1985).

An Illinois court in *In re Marriage of Dettore,* 86 Ill. App. 3d 540, 541–42, 408 N.E.2d 429 (1980), held that a pending workers' compensation award was divisible property. The court noted that where the claim accrued during the marriage, precedent allowed divisibility of such awards *received* during marriage. The court then reasoned that to disallow division in a marriage dissolution award would create the risk of a claimant controlling the date of his settlement, thereby shielding it "from equitable distribution by the dissolution court." Id.

Some states prorate the award of the proceeds of a personal injury action. "To the extent that a personal injury award for loss of earnings and permanent impairment of ability to earn money is applicable to the years while the marriage existed, it is marital property. To the extent [that it] can be prorated to the remaining years of life expectancy following [divorce], it is nonmarital." *Weakley* v. *Weakley,* 731 S.W.2d 243, 244 (Ky. 1981). The portion of the award compensating the wife for her pain and suffering was not divided. The court in *Weakley* likened a tort recovery for loss of wages and permanent impairment of the ability to earn money as similar to a workers' compensation award, since the latter is also intended to replace money that

otherwise would have been earned during the marriage and thus become marital property. Id.

Courts in several states permit an award against a personal injury claim in dissolution cases, but limit the award to that portion of the recovery representing lost wages and medical expenses. In *Jurek* v. *Jurek,* 124 Ariz. 596, 606 P.2d 812 (1980), the cause of action arose during the marriage but after the divorce action had been filed. The pending cause of action was nevertheless considered divisible marital property with respect to the amount representing compensation for medical care and loss of wages. In an Idaho case, the court concluded that that portion of workers' compensation benefits awarded during marriage for earning power lost during the marriage was divisible marital property, but compensation for impairment of future earning power was not divisible. *Cook* v. *Cook,* 102 Idaho 651, 637 P.2d 799 (1981). Similar conclusions have been reached by courts in Minnesota (*Van de Loo* v. *Van de Loo,* 346 N.W.2d 173 [Minn. App. 1984]), and Washington (*Brown* v. *Brown,* 100 Wash. 2d 729, 675 P.2d 1207 [1984]).

Of the states that have refused to award one spouse a share of the other's personal injury action, the refusal is usually based on a specific exclusion in state statutes. In denying a spousal claim, a Pennsylvania court, in *Hurley* v. *Hurley,* 342 Pa. Super. 156, 492 A.2d 439 (1985), concluded that the legislature intended to preclude division since state law excluded from the definition of marital property "property acquired after separation until date of divorce." In that case the injury was sustained and the suit was initiated during the marriage, but the award was received after separation but prior to divorce.

The court in a North Carolina case denied a claim for division on the grounds that a state statute defines

personal injury recoveries of married persons as their sole and separate property. The divorce statute allowed division of marital property but not of separate property. *Johnson* v. *Johnson,* 75 N.C. App. 659, 331 S.E.2d 211 (1985).

In *Unkle* v. *Unkle,* 305 Md. 587, 505 A.2d 848 (1986), division of the personal injury claim was denied because the court construed the state family law section to exclude the claim since it was not "acquired" during the marriage. Other states that have statutes specifically addressing the divisibility of personal injury claims include Delaware, California, New York and Louisiana.

Some state statutes define the marital property that is subject to divisibility in dissolution actions and specify those nondivisible exceptions, and a few courts have designated a tort recovery as marital property on the basis of the failure of the legislature to include it within the listed exceptions. *In re Marriage of Fjeldheim,* 676 P.2d 1234 (Col. App. 1983); *Nixon* v. *Nixon,* 525 S.W.2d 835 (Mo. App. 1975).

Finally, there have been decisions that denied a spouse access to a personal injury claim on the ground that its actual value was too speculative. *McNevin* v. *McNevin,* 447 N.E.2d 611 (Ind. App. 1983); *Fries* v. *Fries,* 288 N.W.2d 77 (N.D. 1980).

In summary then, states have denied a spouse an award of any part of a personal injury claim for the following reasons: (1) The court's interpretation of statutory language precluded an award; (2) specific language of a statute excluded the award; (3) such an award as to a pending claim is speculative. Since Connecticut statutes do not exclude such an award, only the last stated reason is pertinent to this case.

Connecticut courts have had no hesitancy in making awards in dissolution cases where there have been

uncertainties as to values and amounts, and they were premised on the occurrence of some contingency. Thus, in *Thompson* v. *Thompson,* 183 Conn. 96, 438 A.2d 839 (1981), the court asserted jurisdiction over unaccrued pension rights. The exact benefits were unknown and would depend on whether the recipient survived until retirement, earnings before retirement, etc. Id., 100–101.

In *Silver* v. *Silver,* 170 Conn. 305, 365 A.2d 1188 (1976), the amount of alimony awarded fluctuated, contingent on the payor's income. Finally, the *Rubin* court has countenanced making a payment contingent upon a future event stating: "We are not aware of any principle of law that necessarily precludes a trial court, in exercising its discretion to fashion an alimony award, from ordering a payment that is contingent upon some future event. Such contingent awards often appear in judgments that have incorporated agreements of the parties that provide for adjustment of the amount of support or alimony to be paid in relation to the earnings of the parties." *Rubin* v. *Rubin,* supra, 233–34.

Michigan is among the states that hold a right of action to be property and available for division in a dissolution suit. A leading case from Michigan is *Heilman* v. *Heilman,* 95 Mich. App. 728, 291 N.W.2d 183 (1980). In that case the court held that the husband's pending tort claim and the wife's per quod claim were divisible property, stating "a right of action is 'as much property as any tangible possession.' " Id., 731. Michigan law (Michigan Compiled Laws §§ 552.18, 522.19) authorized the court to assign to either party the *"real and personal estate . . .* com[ing] to either party by reason of the marriage . . . ." (Emphasis added.) The Michigan law is as close to our own statute in this respect as this court has been able to find.

Finally, though its value is undetermined (and it may prove to have none), a personal injury action does constitute a "presently existing interest," as required by the Supreme Court in *Rubin*. The court rules, therefore, that an unliquidated personal injury action is subject to an award pursuant to § 46b-81 of our statutes.

## II

The next issue for the court to address is whether, on the facts of this case, the defendant is entitled to alimony or "any part of the estate" of the plaintiff.

Although this marriage lasted approximately seven years and the parties lived together for about five years, it is the conclusion of the court that this issue should be resolved in favor of the defendant.

Support for this conclusion is derived from the testimony of the parties with the plaintiff himself giving the most eloquent description of what his wife went through after he was injured.

The defendant had completed two years of college when she left to marry and raise a family. Her husband saw the couple's roles as clearly delineated—he would be the breadwinner, she would keep house and raise the children. He consistently opposed her seeking employment. In the course of the marriage, the defendant experienced six pregnancies, none successful. She had miscarriages and ectopic pregnancies and was obliged to undergo several gynecological surgical procedures. When the plaintiff was injured in the industrial accident, the lives of this young couple were dealt a tragic blow. The husband's disability brought with it financial problems. All of his time was spent in treatment and his wife was confronted with a marital situation that would have driven the average person to run for cover. She attended to her husband, gave him com-

fort and as he grew frustrated and lashed out at the cutoff of his benefits and became, in his own words, "mentally shot," she attempted to help him.

The couple was forced to move several times because of money shortages and their families loaned them money—the defendant's family contributing $30,000. The plaintiff became obsessed with the injustice he felt and he lived and breathed only for the litigation over his injury. At one point, he could not sleep and was up at odd hours, requiring the defendant to sleep only when he did.

At some point it was discovered that the defendant had a serious gynecological defect caused by DES. This led the defendant to consider joining a class action brought by other DES victims and although the parties disagree on this point, the defendant claims she did not pursue this avenue of relief because of the plaintiff's assurances that he would look after her from his recovery and his concerns that her suit might have an adverse effect on his suit.

The defendant sought counseling to save her own sanity and the marriage, but the plaintiff did not see this as worth the trouble and he never met with the counselor.

At this time, the defendant has no marketable skills, little job training and is handicapped by a precarious health situation. She lives with her parents and manages a candy store, earning $200 a week. She has a loss of consortium claim pending as part of the plaintiff's personal injury action in this court.

While this industrial accident undoubtedly destroyed this marriage and shattered the lives of this couple, the impact on the defendant was and continues to be substantially more than is likely to be addressed by her claim for loss of consortium.

## III

As indicated above, the plaintiff has been rendered totally disabled and he exists on the benefits he receives from workers' compensation. He has no assets and his only opportunity to accumulate assets lies with his personal injury action. Therefore, the court must look to that asset to assist in the rehabilitation of the defendant so that she can put stability into her life.

This case strongly suggests that there is a weakness in our statutes, for the preferred handling of this case would be for the court to retain jurisdiction over the matter and address the question of the amount to be awarded when the negligence action is tried or settled. This would have the added advantage of discouraging a party from delaying the trial or settlement of his or her lawsuit until a marriage is dissolved. Since the court does not enjoy that option, the following formula is found to be fair and equitable under the circumstances of this case, it being the court's intention to consider the plight of the plaintiff and the need of the defendant.

The defendant is awarded $125,000 out of any net recovery received by the plaintiff in the amount of $375,000 or more. If the plaintiff's net recovery is less than $375,000, the defendant is awarded one third of such recovery. "Net recovery" for the purposes of this award shall be defined as the amount of any settlement proceeds, jury verdict, or court judgment, less court costs, expenses of trial, counsel fees and workers' compensation lien.

Any net recovery of the defendant on her claims for loss of consortium shall be considered a credit in favor of the plaintiff, thereby reducing the defendant's award herein by the amount of such net recovery, so that in

no event shall the defendant's total recovery for loss of consortium *plus* this award exceed $125,000. Any net recovery on her loss of consortium claim in excess of $125,000 shall be hers solely.