[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage. The parties CT Page 974 were married on February 14, 1987, and three children were born issue of the marriage. At the time of trial in 1995 the children were ages two, seven and eight.
The parties have been married for almost nine years. They separated in February 1994. Mrs. Anderson worked off and on throughout the marriage except for periods when she was unable to work due to complications from her pregnancies and because of her child-rearing responsibilities. Mr. Anderson was the principal source of financial support for the household.
The plaintiff, Mr. Anderson, is 38 years of age and works out of his brother's automobile business as an "independent car crusher". He was unable to estimate how many hours he might have worked in 1994, testifying that, in his own words, he "works when (he) wants to work". At the time of trial Mr. Anderson's brother was incarcerated, and he was managing the brother's business, which is in the name of his brother's wife.
The court found Mr. Anderson to be an entirely unreliable witness when it came to financial matters. His financial affidavit showed a gross weekly income of $230, but by the end of the trial he had testified that his brother gave him $100 additional each week. Mr. Anderson receives money from his brother's business whenever he needs it, frequently deals in cash and keeps no records. His tax returns for several years were demonstrably false, including Mrs. Anderson's income but none of his own during years when he was giving her $500-800 weekly to pay the family's expenses. While it is true that Mrs. Anderson signed these returns as well, the court was persuaded that she did so under Mr. Anderson's domination.
Based on bank records introduced by Mrs. Anderson and her testimony, which the court found to be credible, the court finds that Mr. Anderson has an earning capacity which would yield him a net annual income of approximately $45,000. This may be an understatement of Mr. Anderson's earning capacity since the bank records for one recent year, 1990, reflected an income of considerably more than this. Mr. Anderson claimed that these bank records overstate his income for certain years because they include deposits of insurance proceeds from two accidents in which he was involved. One of these accidents allegedly occurred in 1989, and, although Mr. Anderson was vague as to the time of the second accident, the court understands from his testimony that it occurred during the following year, i.e., in CT Page 975 1990. No documentation was provided by Mr. Anderson as to the occurrence of these accidents or the disposition of the claimed insurance proceeds, and the court has already expressed its opinion of his veracity when it comes to financial matters. Nevertheless, the court accepts that the bank records for 1990 may contain some of the insurance proceeds from these accidents. In the absence of any evidence, the court is not willing to assume that the 1991 and 1992 bank records would be so affected. The court is also mindful that the record of deposits into the principal bank account used by the parties may not reflect the actual funds available to the plaintiff.
The defendant, Mrs. Anderson, is 29 years of age, and the parties' three minor children and she had been receiving AFDC for approximately two years at the time of trial. Mrs. Anderson has worked at a number of jobs, and the court finds that she has a potential earning capacity of $8-10 an hour as a bank teller or secretary/receptionist. It would not be in the best interest of the minor children for her to become employed until the youngest of those children, who will soon be three, is established in school on a full-time basis. Until that time, the children and she require support from Mr. Anderson, which the court's orders will be intended to provide.
In the course of the trial in this matter, Mr. Anderson attempted to prove that Mrs. Anderson was cohabitating with another individual, and that that individual was providing support for her and the minor children. That effort failed utterly. The court finds that Mrs. Anderson has not been cohabitating with another individual, and that her only sources of support are the taxpayers of Connecticut and occasional amounts provided to her by her parents.
The plaintiff also expended a great deal of effort in attempting to show that Mrs. Anderson has a valuable asset in the proceeds of a potential lawsuit arising out of a motor vehicle accident in May 1994, after the parties had separated. Post-trial proceedings disclosed that a settlement offer in the amount of $24,000 had been made to Mrs. Anderson, and Mr. Anderson, through counsel, advised the court that he would accept that figure as the value of Mrs. Anderson's claim. After deductions for her attorney's fee and liens by a medical provider, the no-fault carrier and the State of Connecticut,[1]
however, Mrs. Anderson is unlikely to realize more than $10,000. CT Page 976
The court has considered the factors in § 46b-81 of the General Statutes, as well as the case of Raccio v. Raccio,41 Conn. Sup. 115 (1987), in determining what share, if any, Mr. Anderson might have in that asset. The court concludes that Mr. Anderson has no equitable share in this sole asset of Mrs. Anderson. The court does believe that the availability of funds from this asset obviates any need for an order concerning the payment of Mrs. Anderson's counsel fees in this matter.
Mr. Anderson testified that one of the causes of the breakdown was Mrs. Anderson's extravagance, while she testified that Mr. Anderson controlled the use of all of the family's funds and refused to make money available for ordinary household expenses to the point where it was necessary for her to borrow funds from family members to meet the medical needs of the children. She also testified that Mr. Anderson was sexually demanding, including offering payment for certain sexual acts which Mrs. Anderson was reluctant to engage in. The court accepts Mrs. Anderson's testimony as to the causes of the breakdown of the marriage.
The court has considered all of the criteria of Sections46b-62, 46b-81, 46b-82 and 46b-84 of the General Statutes, together with the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account",Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as stated elsewhere in this memorandum. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice it to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and need not give equal weight to each factor. Kane v. Parry,24 Conn. App. 307, 313-14 (1991).
The court finds that it has jurisdiction, that the allegations of the complaint are proven and are true, and that the marriage has broken down irretrievably. Based on those findings, as well as the court's consideration of the testimony and exhibits introduced at trial, its observation of the witnesses and assessment of their credibility, the court enters the following orders: CT Page 977
1. The marriage of the parties is hereby dissolved on grounds of irretrievable breakdown.
2. The parties shall have joint legal custody of the three minor children, and the physical residence of the children shall be with the defendant. Visitation arrangements shall be in accordance with the agreement of the parties and the recommendation of the Family Services Unit of February 1, 1995. That recommendation is made an order of the court and incorporated in the judgment of the court.
3. Based on the earning capacity found by the court and on the child support guidelines, the plaintiff shall pay the defendant as child support the sum of $360 weekly by way of immediate wage attachment, pursuant to § 52-362(b) of the General Statutes.
4. The plaintiff shall also pay the defendant as alimony the sum of $150 weekly for a period of four years, also by way of immediate wage execution. This award of alimony shall be non-modifiable as to term. Alimony shall terminate sooner if the defendant dies or remarries.
5. The court finds that as of October 4, 1995 an arrearage existed payable by the plaintiff to the State of Connecticut in the amount of $398. The plaintiff shall pay to the State of Connecticut $1.00 per year as alimony.
6. The plaintiff shall provide health insurance for his minor children as available to him through his employment and shall notify the defendant of the provisions of any such insurance. Should the defendant secure employment through which health insurance is available for the benefit of her minor children, she shall secure such insurance through her employment and notify the plaintiff. The parties shall be equally responsible for any unreimbursed or uninsured medical expenses.
7. The plaintiff shall maintain in full force and effect the Sentry life insurance policy presently in force, with the three minor children as equal and irrevocable beneficiaries until they reach the age of 18. The plaintiff shall annually provide evidence of the present status of the policy to the defendant. The defendant shall take no action to reduce or otherwise impair the full face amount of the life insurance CT Page 978 provided by the policy.
8. The plaintiff shall transfer all of his right, title and interest in and to the 1986 Buick LeSabre to the defendant.
9. Other than as affected by these orders, the plaintiff and the defendant shall retain all of their right, title and interest in any assets shown on their financial affidavits of September 21 and September 20, 1995, respectively.
10. The defendant shall be fully responsible in the amount indicated for the following liabilities shown on her financial affidavit, and she shall hold the plaintiff harmless from any liability thereon:
 Filenes $100 Sears $1,400 Discover $1,000 City of Waterbury $500 Town of Cheshire $70 Bristol Hospital $1,000 Dr. Wesley Holden $250 Chemical (joint) $3,280 J.C. Penney $400 ------ Total $8,000
The plaintiff shall be responsible for the remaining balances on the liabilities shown above, except for the Filene's and J.C. Penney debts, and he shall be responsible for the liabilities shown on his financial affidavit of September 21, 1995 and shall save the defendant harmless from any liability on those debts and on his share of the liabilities on the plaintiff's financial affidavit.
11. The maiden name of the defendant shall be restored to her, and she may hereafter be known for all purposes as Melissa Meaney.
12. Each party shall be responsible for the payment of his or her own counsel fees.
SHORTALL, J.