[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The parties married on July 27, 1981. Both parties have resided continuously in this state for at least twelve months next preceding the date of filing the complaint; therefore, the court has jurisdiction. There are four minor children issue of the marriage: Gabriel Moran born October 2, 1980; Isabela Moran born January 9, 1982, Rosalia Moran born July 4, 1984; and Karla Moran born July 21, 1989. The marriage has broken down irretrievably, and a decree of dissolution will enter on that ground.
The plaintiff husband was born on April 4, 1944. On the date of the marriage, he was 37 years old. He is now 53. The defendant wife was born on November 5, 1964. On the date of the marriage, she was 16 years old. She is now 32. This is the third marriage of the husband and the first marriage of the wife.
The husband is from Ecuador. He has the equivalent of a third grade education within that country. The wife is from Mexico. She has the equivalent of a junior high school education within that country.
The parties met in this country in 1978. At that time, the wife was only 14 years old and unmarried. The husband was married to, but separated from, his second wife, a fact which was not then disclosed to the defendant. As a result of her relationship with the plaintiff, the defendant became pregnant and bore children at a very early age. Gabriel was born when the defendant was only 15 years old and Isabel followed when the defendant was 17 years old. CT Page 11070
For most of the marriage, the husband was employed as a cleaning services worker or supervisor. At the height of his earnings, he made approximately $40,000 or $50,000 per year. In about 1995, the husband lost that employment and became employed as a bus driver. His earnings were less.
On or about August 2, 1996, apparently during and in the course of his employment, the husband sustained a substantial and severe injury to his right leg. This has prevented him from working. His medical care and treatment have been extensive and are ongoing. He has not reached the point of a maximum medical improvement.
As a result of this injury, the husband collects "temporary total" worker's compensation benefits in the sum of $331.00 weekly. He has a claim pending for further worker's compensation benefits including a specific indemnity award. The value of the future benefits and the specific indemnity award is incapable of precise determination because it is unliquidated. The husband also lists on his most recent financial affidavit a "personal injury case — value unknown" relating to the same accident.
The remaining income of the husband is from the rental of a Bridgeport apartment. His net income from that rental is $53.50 per week after payment of common charges and a property tax.
In their claims for relief, neither party appears to dispute that the husband's pending worker's compensation claim and personal injury claim are part of his "estate", which may be assigned to either party. See Connecticut General Statutes §46b-81 (a). However, the parties differ as to how and when the husband's unliquidated claims should be assigned.
The husband urges, essentially, that this court should continue to exercise jurisdiction until his claims have been liquidated and then to consider an assignment. The wife prays that an assignment be ordered now. This court agrees with the wife that any such assignment should, dare say must, be made now.
The plain language of the controlling statute, § 46b-81(a), dictates that any assignment of either party's estate must be made ". . . at the time of entering a decree . . . dissolving a marriage. . . ." The only reported Connecticut case of which this court is aware, holding that an unliquidated personal injury claim is an asset of a divorcing party's estate, is Raccio v.
CT Page 11071Raccio, 41 Conn. Sup. 115 (1987). There (DeMayo, J.), as here, the court concludes that it does not have the option of retaining jurisdiction over the matter to address the question of the amount to be awarded once the husband's claims are tried or settled.
Turning to the wife's employment background, in the early years of the marriage she split her time between caring for her children and working with her husband in his cleaning service operation. In approximately 1985 she obtained a beautician's license. Since then, for the most part, she has been working as a hairdresser. For the last three years, she has worked as a hairdresser at a spa in New Canaan. The wife's current earnings, including tips, amount to $341.00 per week, net.
The wife is in good health except for what she claims to be carpal tunnel syndrome in both wrists and hands. This condition became noticed by her about one year ago. She sought medical attention at a clinic and its recommendation that she use braces at night seems to have helped. While the prognosis may be uncertain, it does not appear to the court that the wife's condition will substantially interfere with her present or similar employment.
The parties have entered into an agreement, dated September 18, 1997, concerning custody of the children, visitation, liability for certain unreimbursed medical, dental and pharmaceutical expenses and insurance. The court having heard the evidence, believes it is fair, equitable and in the best interest of the children and shall make the agreement an order of the court.
The court next examines the parties' obligation for the past and future support of their children. On December 21, 1995, the court (Ford, J.) entered an order awarding custody of the four minor children to the wife and further ordered that the husband pay $200.00 per week in child support to the wife. That order was never modified, and at the present time, there is an arrearage of $16,000 ($18,200 less $2,200 in payments credited to the husband.) Parenthetically, the husband claimed a greater credit, but the court sustained the wife's objection to certain other payments which the husband sought to introduce.
The husband has sought to escape the arrearage because, some time after the December 21, 1995 order, his two oldest children CT Page 11072 came to reside with him. Our Appellate Court has held that, in the absence of an action for modification of child support by the payor spouse, an agreement between the parties allowing such modification, or circumstances warranting the application of a limited equitable remedy, it is not error for the trial court to refuse to credit the payor spouse for amounts expended by him for the support of their child while the child was in his physical custody. Goold v. Goold, 11 Conn. App. 268 (1987).
Here, the court finds that none of the foregoing circumstances have been credibly proven by the plaintiff, the payor spouse, and declines his request to cancel the arrearage.
The court has prepared a child support and arrearage guidelines worksheet, which will be attached to and made a part of this decision. The court's worksheet substantially tracks the defendant's worksheet submitted with her claims for relief except as noted below. Of course, certain variances follow as the result of those differences.
First, the court has used a $385.00 per week gross income figure for the husband. This is because the court has deducted from the husband's Bridgeport condo rental the expenses for the common charges and property tax. This deduction is expressly supported by Guidelines § 46b-215a-1-11 (A)(iii).
Second, the court has used the actual arrearage sum, $16,000, previously noted, rather than the $18,000 suggested by the wife which includes interest and attorney's fees.
Under the guidelines, the husband's weekly order of support is $4.00 currently and $21.00 on the arrearage for a total of $25.00.
The court finally addresses the matter of the probable causes of the breakdown of this marriage. The court believes that the causes of the breakdown of this marriage were the husband's physical abuse of his wife and his several affairs with other women. In fact, the husband admitted having girlfriends during the entire marriage. One of the relationships resulted in the husband's fathering another child, not the issue of this marriage.
The wife legitimately believed that, given the children and also the husband as the major source of the family's support, she CT Page 11073 could not leave the marriage. Though the wife admitted an extramarital relationship that occurred earlier this year, it was not a cause of the breakup of this marriage.
The court has considered all of the applicable statutory criteria, including §§ 46b-81 and 82, and enters the following orders.
1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown.
2. The parties shall have joint legal custody of the four minor children issue of the marriage.
 a. The plaintiff shall have physical custody of Gabriel Moran and Isabel Moran.
 b. The defendant shall have physical custody of Rosalia Moran and Karla Moran.
 c. Each party shall have rights of liberal visitation with the children of whom the other party has physical custody.
3. The parties shall be liable for medical insurance and the cost thereof, and for unreimbursed and necessary medical, dental and pharmaceutical expenses of the children, as more specifically set forth in paragraph 3 of the parties agreement dated September 18, 1997.
4. The plaintiff shall pay the defendant child support in the sum of $4.00 per week currently and $21.00 per week on the arrearage of $16,000 until the arrearage is satisfied for a total of $25.00 per week.
5. The plaintiff shall pay the defendant alimony of $1.00 per year until the death of either party or the remarriage or cohabitation by the defendant, whichever first occurs.
6. The defendant is awarded as an assignment of property $50,000 out of any net recovery of $150,000 or more by the plaintiff. If the plaintiff's net recovery is less than $150,000, the defendant is awarded one third of such recovery. "Net recovery" for the purposes of this award shall be defined as the aggregate amount of any specific indemnity or like award CT Page 11074 or benefit recovered by the plaintiff in his worker's compensation claim, any settlement or judgment recovered by the plaintiff in his personal injury claim or action, less any lien against such recoveries and less any reasonable costs, expenses and attorney's fees incurred in the prosecution of such claims or actions.
7. The parties are each allowed as tax deductions the minor children who actually reside with them.
8. The plaintiff shall indemnify and hold harmless the defendant from any liability or garnishment of the Bridgeport Hospital as shown on her affidavit.
9. Except as ordered specifically above, each party shall retain ownership of any assets and shall be responsible for and indemnify the other party against any liabilities as shown on their financial affidavits.
10. Each party shall be responsible for his or her own attorney's fees.
11. Counsel for the plaintiff shall prepare the judgment file.
Judgment shall enter in accordance with the above findings and orders.
KAVANEWSKY, J.
[EDITORS' NOTE: CT Page 11075 to 11077 are blank.] CT Page 11078