[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On July 18, 1994 the marriage of the parties was dissolved, and orders were entered concerning custody of their two minor children, visitation and the distribution of property. On March 12, 1996 the Appellate Court reversed the trial court's (Kline, J.) decision in part and remanded the case for further proceedings concerning all financial issues between the parties. The court left in place the dissolution and the orders concerning custody and visitation.
The matter came on for trial before this court on August 18, 1997. It was agreed between the parties that this court could consult the testimony adduced before Judge Kline at the original trial as to all of the statutory factors affecting property distribution, alimony and child support; therefore, the testimony on August 18 was limited to the parties' present circumstances, as those circumstances may affect this court's orders on these same matters.
No reason appears why this court should not adopt Judge Kline's findings concerning the statutory factors. He had more extensive opportunity to observe the witnesses and recorded his findings in a thoughtful and comprehensive memorandum of decision. The parties' financial circumstances at the time of trial before this court seemed to have changed hardly at all since the trial before Judge Kline in 1994. The plaintiff reports net weekly income of just over $200 from her part-time nurse's CT Page 13092 assistant job, and the defendant's sole reported source of income is federal and state assistance of approximately $146 weekly. While the court did not find either of the parties especially credible on financial matters, it does seem clear that they are in straitened circumstances, and that their only asset, as was the case at the time of Judge Klines's decision, is Mr. Tyc's awards under the worker's compensation statutes.
The Appellate Court found fault only with Judge Kline's refusal to include in the marital estate certain worker's compensation benefits which Mr. Tyc may receive in the future, either by way of a successful appeal of an award already made and/or by a successful application for additional benefits under § 31-308a, C.G.S. The Court found that "future benefits paid under a claim, filed pursuant to General Statutes § 31-308a, are an existing interest includable as part of the marital estate". Tyc v. Tyc, 40 Conn. App. 562, 567-68 (1996). The court found further that "any benefits awarded or confirmed on appeal" also constitute presently existing property interests subject to distribution as part of the marital estate. Id., 569. Therefore, this court's task is to attempt to value these two categories of benefits and distribute them equitably between the parties. In addition, all other financial orders entered by Judge Kline must be reconsidered in light of this court's distribution of those portions of the marital estate.
Section 31-308a, C.G.S., provides for additional compensation benefits for a worker suffering a partial permanent disability, such as Mr. Tyc suffered in this case, in the discretion of the worker's compensation commissioner. Although the heart attacks which ultimately led to a finding of a partial permanent disability on Mr. Tyc's part occurred in 1988 and 1991, he has never made application for benefits under this statute. In testimony offered before Judge Kline, the attorney who was then representing Mr. Tyc in his worker's compensation matter indicated his intention to do so on behalf of Mr. Tyc, but at the time of the trial before this court, over three years later, such application had not yet been made. Moreover, the statute provides that, "(a)dditional benefits provided under this section shall be available only to employees who are willing and able to perform work in this state". Mr. Tyc claimed before this court that he is totally disabled from working; thus, whether or not he would qualify for such an award seems questionable.
Nevertheless, the Appellate Court having held that Mr. Tyc's CT Page 13093 claim under § 31-308a constitutes "property" within § 46-81, this court must pass on to the other questions regarding the equitable distribution of property identified by the Supreme Court in Krafick v. Krafick, 234 Conn. 783, 792-93; viz., "what is the appropriate method for determining the value of the property (valuation); and . . . what is the most equitable distribution of the property between the parties (distribution)".
The only evidence presented to this court concerning the valuation of this claim was the testimony of Attorney Robert Yules at the trial before Judge Kline, a transcript of which was introduced as Exhibit C. In that proceeding Attorney Yules testified as follows concerning the valuation of that claim:
 Q. After the monies have been paid for his permanent partial disability, Mr. Yules, is it your intention to make a claim for any out-of-pocket benefit?
 A. If we can, yes. Under the 31-308a, our claim is that he's totally incapacitated.
 Q. Okay. Discretionary 308a benefits for diminution and earning capacity?
 A. Yes, it's our claim he has no more earning capacity.
 Q. And has it been your experience, Mr. Yules, under the compensation law if he was awarded three hundred and twelve weeks of PPD benefits that you could claim up to three hundred twelve weeks of discretionary 308a benefits?
 A. Either that or perhaps more depending upon when the commissioner found his useful work life expectancy to have been ended. He's at the later stages of his career.
 Q. And if any award's made and you were to continue benefits those would be purely discretionary with the compensation commissioner?
A. Yes. CT Page 13094
 Q. And do you anticipate making any other type of claim other than the discretionary 308a benefits on behalf of Mr. Tyc?
 A. Only with regard to perhaps arguments with regard to about what is due him.
 Q. Okay. And could you quantify the amount of award-approximately that you might be seeking for discretionary 308a benefits and interest if you need to make those claims?
 A. I really can't. Discretionary with the commissioner, I would ask the commissioner for the maximum amount available, and I don't know how that would be effected by legislation which is current or going to be enacted.
 Q. Do you know that whether or not could be capped, at the amount of his weekly benefit would cap the amount of benefit that he could request?
A. Yes, it would be.
Transcript of testimony, May 9, 1994, pp. 8-9.
Based on this testimony, this court can place no dollar value on Mr. Tyc's claim under § 31-308a. It should be noted that the Appellate Court found that, "(a) claim under § 31-308a issusceptible to valuation and is not a mere expectancy". Id., 568 (emphasis added). Only a reasonable "guesstimate" of its value can be found in Mr. Yules' answer, quoted above, in which he indicates that the minimum value of the claim would be equal to the value of the partial permanent disability award already made to Mr. Tyc, and that amount was approximately $186,000.
In the absence of any evidence the court is unable to assign a monetary value to the claim, although it is potentially of significant value. In such an event the court will adopt the same approach adopted by the court in Raccio v. Raccio, 41 Conn. Sup. 115,124 (1987), in awarding a percentage interest in an unliquidated personal injury award. In his original decision Judge Kline awarded Mrs. Tyc, the plaintiff here, a 40% share in the partial permanent disability award Mr. Tyc had already received. No reason appears why the same percentage share should CT Page 13095 not devolve to Mrs. Tyc from this potential award.
The same analysis and the same difficulty applies to Mr. Tyc's benefits on appeal. The only evidence the court received was a letter of April 16, 1997, which was marked as Exhibit A, recounting the present status of the appeal. The letter contains a somewhat cryptic reference to an adjusted weekly rate of compensation higher than the rate previously paid to Mr. Tyc, but it also indicates that that increase is presently on appeal to the Appellate Court. Accordingly, the court will enter the same order with regard to the increased benefits which Mr. Tyc may be awarded as a result of his pending appeal; viz., that Mrs. Tyc will have 40% of such an award.
Having determined the distribution of Mr. Tyc's worker's compensation awards, the court must now consider what effect these additional orders have on the other financial orders entered by Judge Kline.
In view of the absence of sufficient current income to Mr. Tyc upon which to base a child support award, Judge Kline ordered the establishment of two trust funds, one for each of the minor children, in the amount of $10,000, to be set aside for their education. According to the testimony at trial before this court, Mr. Tyc remains unable to pay current child support. Therefore, the court will adopt the same approach as did Judge Kline, with some variations in the manner of creation and terms of the trusts, so that the children may have some benefit from the worker's compensation awards which represent the only assets of the parties. Over and above the 40% of those awards ordered for Mrs. Tyc's benefit, the court will order that an additional 10% of the awards be set aside by her as trust funds for the benefit of the minor children. See Louney v. Louney, 13 Conn. App. 270,274-75 (1988).
Judge Kline ordered the defendant to pay the plaintiff the sum of $2,700 in repayment of a loan she had advanced to him for a trip to South Africa, to visit his daughter from another relationship. Upon the distribution of the worker's compensation funds presently held in escrow, Mr. Tyc will be able to meet this order of the court promptly. In addition, the court will order Mr. Tyc to pay Mrs. Tyc the sum of $1,500 in payment of debts for his daughter's private school education, as shown on Mrs. Tyc's financial affidavit of August 18, 1997. CT Page 13096
Judge Kline ordered no alimony payable by Mr. Tyc to Mrs. Tyc. Pursuant to § 46b-82, C.G.S., one of the factors the court must consider in determining how much alimony, if any, to order paid by one party to the other in a dissolution action is the property distribution ordered by the court. Since Mrs. Tyc will be receiving a substantial amount immediately as a distribution of her 40% share of the permanent partial disability previously received by Mr. Tyc, and since Mr. Tyc shows no present ability to pay alimony, the court will not enter any orders concerning either periodic or lump sum alimony.
Mrs. Tyc seeks an award of counsel fees in the approximate amount of $7,500 to defend the appeal taken by Mr. Tyc.[1] She made a similar request to Judge Kline at the conclusion of the original trial. Noting that his orders would result in Mrs. Tyc having assets of her own, Judge Kline denied her motion. This court's orders will have the same result as Judge Kline's orders in that regard; therefore, her request for counsel fees on appeal is denied.
Finally, as indicated earlier in this memorandum, although the heart attacks leading to the compensation award for a 40% loss of heart muscle occurred in 1988 and 1991, Mr. Tyc has never pursued an award under § 31-308a, C.G.S. His failure to pursue this potential award continues to detract from his ability to meet his obligations to support Mrs. Tyc and their children through a distribution of the only assets available to the parties. Therefore, the court's orders will compel Mr. Tyc promptly to begin the process for determining whether or not an award under that statute will be made and the amount of such award.
Based on all of the findings herein, as well as Judge Kline's findings in his memorandum of decision of July 18, 1994, and for the reasons stated herein, the court enters the following orders:
1. The defendant shall forthwith authorize and direct the persons holding those funds in escrow immediately to disburse to the plaintiff 50% of the total worker's compensation award for permanent partial disability, out of the various escrow accounts in which the proceeds of that award are being held. The plaintiff's 50% share shall be of the net amount of the total award, including any amount previously paid to the defendant and any interest earned, after deduction of counsel fees and expenses for collecting/holding these amounts in escrow. CT Page 13097
2. Of the funds transferred to her pursuant to paragraph 1, supra, the plaintiff shall hold in trust for the benefit of her two minor children an amount equal to 10% of the total funds awarded to the defendant as a permanent partial disability award. The order of this court shall be sufficient to create two such trust accounts in equal amounts, one for each of the children, and the plaintiff shall act as trustee. The plaintiff may expend funds from each account only for the benefit of the child named in that account. She shall pay educational and medical expenses for the children from these accounts. Each account shall terminate upon the 18th birthday of the child named in the account. On the 18th birthday of the older of the two children, Sylvia, any funds remaining in her account shall be transferred to the account for Natalie. On the 18th birthday of Natalie, any funds remaining in her trust account shall be divided equally by the parties. Annually the plaintiff shall provide to the defendant a statement of the uses to which the funds have been put and the amount, if any, remaining in each account.
3. In addition to the percentage of the permanent partial disability awarded in paragraph 1, supra, the plaintiff shall have 40% of any amounts recovered by the defendant under §31-308a, C.G.S., and 40% of any increased funds recovered by the defendant as a result of his appeal of the permanent partial disability award previously made. The plaintiff's 40% share shall be of the net amount recovered after payment of counsel fees and costs. The defendant shall remit her share to the plaintiff within 30 days of his receipt of any award under § 31-308a, C.G.S., and/or his receipt of an increased benefit as the result of his appeal.
4. The court retains jurisdiction to enter additional or alternative orders to carry out the purposes of paragraphs 1, 2, and 3, supra.
5. Within 30 days of this order the defendant shall make application for benefits under § 31-308a, C.G.S., and he shall provide to counsel for the plaintiff copies of that application and of all subsequent papers filed or received in connection therewith.
6. The court adopts paragraph five of Judge Kline's orders of July 18, 1994, and the defendant shall pay that sum to the plaintiff within 30 days of this order. In addition, the CT Page 13098 defendant shall pay to the plaintiff the sum of $1,500 for educational expenses of his minor children, as shown on the plaintiff's financial affidavit of August 18, 1997, and he shall make such payment within 30 days of this order.
7. The parties shall be responsible for the liabilities shown on their respective financial affidavits of August 18, 1997 without any contribution by the other party, and each shall save the other harmless from any liability thereon, except as otherwise affected by these orders.
8. The court adopts Judge Kline's paragraph seven of his memorandum of decision of July 18, 1994 concerning health insurance for the minor children.
SHORTALL, J.