[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on February 25, 1984, a total of 14 years. They met in 1978 and began living together shortly thereafter. By complaint dated May 22, 1996, the Wife instituted this action claiming a dissolution of marriage, an equitable division of the assets, alimony, custody, child support, and other relief. On September 26, 1997, the Wife filed an amended complaint adding a second count against Adelino Costa, the Husband's father, and a third count against Adelino Costa, Antonio Costa and Manuel Costa, relatives of the Husband, claiming that they hold property which properly belongs to the marriage.
The Husband appeared through counsel, denied that the marriage had broken down irretrievably but submitted proposed orders if the court chose to enter a dissolution. The defendants in the second and third counts were defaulted for failure to appear.
Numerous pretrial motions, discovery and restraining orders were entered in the two and one-half year history of the case. A Family Relations Division custody evaluation was also conducted and a report introduced in evidence. During the trial the court was advised that the Juvenile Court was also involved with the family and had issued orders concerning one of the children. A trial commenced which consumed three full days. CT Page 11496
The Wife is 40 years of age, in good physical health, and a high school graduate. She claims to have a learning disability (ADD), has been under the care of a psychiatrist for many years, and takes the medication Zanax for depression. During and before the marriage, she suffered from many bouts of depression resulting in her hospitalization on at least one occasion. By agreement she was a homemaker and did not work outside the home except for recent years in which she did the billing for the family business. She presents herself with no skills, no experience, and a person in need of retraining if she is to be productive. In fact, she has undergone some testing to assist in her job search efforts. The court finds she has an earning capacity of $280 per week ($14,560 per year)
The Husband is 38 years of age, has serious health problems, and completed two years of high school. On October 21, 1991, he was injured in an accident when a car struck him while he was blowing the leaves in his front yard. As a result, he suffered a severe head injury which left him with a traumatic brain injury (TBI) characterized by eruptive and disruptive behavior and cognitive deficits. He is also prone to seizures, the last one being over a year ago, and suffers from a herniated disc which contributes to his physical limitations.
Despite his disability, the Husband continues to coach soccer, travel around the world, and work at his job cleaning swimming pools five and six days per week from early morning to late at night. His stated preference is to not work, stay at home and provide care for his children. For the entire time of the parties' relationship, 20 years, he has successfully operated a pool cleaning business. The court finds he has an earning capacity from employment of $450 per week ($23,400 per year).
It is significant to note that a tort action arising out of the Husband's accident was instituted by the parties and ultimately settled. Under the terms of the structured settlement dated August 25, 1993, (Exhibit C) both parties received the lump sum of $550,000 and the Husband was to receive $2,061.90 per month for a period of 20 years commencing September 25, 1993. Simple calculation indicates 15 years of payments remain. Also, apparently as a result of the accident, the Husband receives Social Security Disability Income of $220.93 per week and the minor children receive $127.50 per week. CT Page 11497
Three children were born to the Wife, issue of the marriage; Noelle born December 24, 1980, Mario born July 3, 1984, and Christen born July 15, 1987. Noelle recently entered college and will soon be emancipated. Her relationship with her father is not good. Mario has a very poor relationship with his sisters at this time and needs to be separated from them. He has been diagnosed as severely, emotionally disturbed. In January 1997 he was placed on juvenile probation, later hospitalized, removed from school for threatening a teacher, and is currently in special education classes. During the spring of 1998 he choked his younger sister until she lost consciousness. If the Husband did not agree to take custody of Mario, the State planned to commit him to a residential facility a choice neither party approved. Despite the monumental evidence of Mario's severe disorder, the Husband seemed to be in denial. Christen, other than the problem with her brother Mario, seems to enjoy a relationship with both parents and her sister Noelle. The Husband's claim for custody of all three children was irrational.
It would serve no useful purpose to chronicle the causes for the marriage breakdown. It appeared to he a dysfunctional marriage for many years. The Wife claimed the Husband drank excessively, gambled, stayed out late, and was abusive. After his accident, she claimed he became more abusive and acquired an obsessive interest in religion. The Husband claimed the Wife was involved with another man and, as a result, neglected him and the children. He claimed the home is out of control due to her staying out late, bar hopping, and sleeping in motels. Suffice it to say, the Wife's position was more credible.
The court finds that residence requirements have been satisfied and no family member is the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes, as well as the holdings in Tyc vs. Tyc,40 Conn. App. 562, Roccio vs. Roccio, 41 Conn. Sup. 115, and Lopiano vs. Lopiano, 19 Conn. Law Reptr. 289, were considered by the court in the entry of the following orders.
 ORDERS
Dissolution of Marriage
The marriage is dissolved on the grounds of irretrievable breakdown. CT Page 11498
Custody and Visitation
The parties shall have joint legal custody of the minor children with physical custody of Mario to the Husband and physical custody of Noelle and Christen to the Wife. Each party shall have reasonable rights of visitation with the child or children not in their physical custody.
Child Support
The Husband shall pay to the Wife child support of $125 per week with no reduction when the child Noelle reaches the age of 18 years. This order assumes that each party will have one minor child living with him or her and that each will receive the social security benefits, if any, attributable to that child. It also assumes the Husband's weekly employment income to be $450.00 (approximately $390.00 net), his share of the weekly insurance settlement income to be $356.87, and his weekly social security income to be $220.93. It further assumes the Wife's weekly employment income to be $280.00 (approximately $260.00 net) and her share of the weekly insurance settlement income to be $118.96.
Medical Insurance
The parties shall name the minor children beneficiaries of any medical insurance which might be available to them through their employment or otherwise. The cost of said insurance, if any, shall be considered an un-reimbursed expense. All un-reimbursed medical, dental and counseling expenses incurred by the minor children shall be equally shared by the parties.
Alimony
The Husband shall pay to the Wife the sum of one dollar per year as alimony. If not sooner terminated by death, remarriage or cohabitation, said alimony shall end 15 years from date and shall not be modifiable by way of extension.
Life Insurance
The Husband shall name the Wife beneficiary on his New York Life Insurance Company policy in the face amount of $100,000 until he no longer has any financial obligation to her for child support or alimony. Proof of the proper maintenance of said CT Page 11499 insurance shall be furnished to the Wife within 30 days from date and at least annually thereafter upon request.
Real Estate
The marital residence located at 13 Fairlane Road, Trumbull, Connecticut, is awarded to the Wife. Title is transferred by operation of law pursuant to Conn. Gen. Stat. Sec. 46b 81(a). The Wife shall assume the obligation of the outstanding mortgage and save the Husband harmless from any and all claims regarding same. The Husband shall retain whatever interest he has in the property located at 630 Fairview Avenue, Bridgeport, Connecticut saving the Wife harmless from any and all claims regarding same.
Division of Assets
The balance of the structured settlement agreement entered into by the parties with the Continental Casualty Company is distributed as follows: the Husband shall be entitled to 75% of the monthly payment of $2,061.90 ($1546.42) and the Wife 25% ($515.48). In the event of the death of the Husband, the Wife shall be considered the contingent payee of 25% of the remaining balance due under the agreement. The amount distributed to the Wife shall be accomplished by assignment. Both parties are to give their full cooperation to expediting the assignment with the Continental Casualty Company. Until the assignment is accomplished, the Husband shall pay to the Wife directly 25% of any payments received by him and the court will retain jurisdiction.
All the assets and liabilities connected with the business known as PC Pools are awarded to the Husband.
The 1995 Dodge is awarded to the Wife subject to the outstanding loan which she shall assume and pay. The 1988 Chevrolet is awarded to the Husband.
The cash surrender value in the New York Life Insurance Company policy is awarded to the Husband.
Each party shall retain their own personal checking account balance.
The balances in the following accounts shall be lumped together and divided equally between the parties: Peoples Bank CT Page 11500 Savings (joint with Adelino Costa approximate balance $60,000), Peoples Bank Savings (joint with Christen approximate balance $18,000), Peoples Bank Savings joint with Mario approximate balance $20,000), and Peoples Bank Savings joint with Noelle approximate balance $16,000).
The balance in the Gordon Scalo escrow account (approximate balance $242,000), after payment of the liabilities hereafter mentioned, shall be divided equally between the parties.
Liabilities
The liabilities of the parties shall be divided as follows.
The Husband shall assume and pay all debts associated with the business known as PC Pools including but not limited to Bel Aqua Pool Supplies ($6,567.50), Nucci Bros Pool Supplies ($2,326.08), and Buzzi Texaco ($700).
The Husband shall be solely responsible for his personal debts including but not limited to the following:
Medical Lab Services $ 332.00 St. Vincent"s Hospital 56.47 Dr. Winnick 57.26 Litwin Jewelers 3,030.36 Psycho-Therapy Group 875.00 HRS 80.02 Ambulance 543.07 Bradlees 40.95 Associated Neurologists 384.00 Carpenter Chiropractic 70.00 ----- $5,869.03
The Wife shall be solely responsible for her personal liabilities including but not limited to the following:
The Limited $ 77.65 Lord and Taylor 341.57 Structure 158.11 Bradlees 619.15 J.Crew 414.39 Express 61.41 Wayside Furniture 476.26 CT Page 11501 Victoria's Secret 230.68 Wayside Group 275.00 ------- $2,654.52
The following obligations shall be paid out of the Gordon 
Scalo Escrow Account before distribution to the parties:
IRS(1996) $ 2,821.00 State of Conn. DRS (1996) 2,500.00 Chase Visa 3,846.13 Dr. Schneider 55.00 Dr. Levin 1,000.00 Filene's 1,884.38 Visa Card 4,996.57 Discover 8,191.50 FCNB Spiegel 3,961.16 Macy's 695.63 ---------- $33,073.93
Personal Property
All of the furniture and personal possession of the parties now located in the marital residence shall become the property of the Husband. He shall remove said items within 30 days from date or they are to be considered abandoned. Arrangements for the removal of the items are to be made by counsel for both parties. In the event of a dispute the parties are to return to court for determination.
Counsel Fees
The Husband shall pay to the Wife the sum of $5,000.00 as counsel fees from his share of the division of the Gordon Scalo escrow account.
IRS Tax Returns
By April 15 of each year, until there is no longer any financial obligation to one another, the parties shall exchange their complete IRS tax returns in order to insure that the payment of alimony and child support are appropriate under the circumstances then existing. CT Page 11502
The Husband shall be entitled to claim Mario and the Wife Noelle and Christen as dependents on all future state and federal tax returns.
The Husband shall claim all income and be entitled to all deductions connected with the business known as PC Pools on his 1998 tax returns.
In the event the parties do not file a joint tax return for calendar year 1997, most likely a preferable course of action, the parties shall equally claim all income and be entitled to all deductions on their respective returns from the business known as PC Pools.
Miscellaneous
Each party shall sign any necessary documents to effectuate the orders contained herein.
Cutsumpas, J.