[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The major issue in this contested dissolution action is the enforceability of a prenuptial agreement signed five days before the 1988 marriage of these two middle aged parties.
The court after hearing all of the evidence reviewing the exhibits and listening to the testimony makes the following findings of facts: The plaintiff husband and the defendant wife were married in Chappaqua, New York on June 26, 1988. There are CT Page 13037 no minor children issue of the marriage and no children have been born to the defendant since the date of the marriage. Both parties have resided in the state of Connecticut for more than one year next before the date of the complaint. Neither party has received any assistance from any governmental agency. The evidence shows that the marriage of the parties has broken down irretrievably and that there is no hope of reconciliation.
The plaintiff husband is 62 and in good health. His back requires treatment by medication and the occasional use of a cane. He still says his health is good. He is unemployed and was terminated from IBM effective February, 1998. He is eligible to receive a pension from IBM in the amount of $59,100 per year. The plaintiff's first marriage ended in 1980. The three children, issue of that marriage, are currently 31, 35 and 37. His children have completed college and are self sufficient and were so at the time that the parties met in August, 1986.
The plaintiff received a B.S. in Chemical Engineering from the University of Michigan in 1956. Two years later, he received an MBA from the University of Michigan. He was employed for the next year and half with Amoco Chemicals in Chicago. Thereafter he started with IBM in October 1960. He was with IBM until he was terminated. His last position with IBM was a Production Manager in the Engineering Department, earning $100,000 per year. He was given a severance check on February 25, 1998 by IBM. This was his last earnings.
The plaintiff has made substantial efforts to obtain new employment since his February, 1998 termination from IBM. He participated in 61 interviews, some of which were in other departments and divisions of IBM. He intends to get a job, but at his age, does not believe that he has a substantial earning capacity.
The defendant is 56 years. She is in good health, but has some current health concerns. She is employed by the Stamford Board of Education earning $65,463 per year. She graduated from St. John's University with a degree in Education in 1963. She has multiple graduate credits from Queens College in Art History, and a Masters in Special and Gifted Education from the University of Connecticut in 1991. She received a Masters in Administration from Fairfield University in 1996. Her Stamford Board of Education salary is projected to increase to $66,000 and she has good prospects of earning an additional $3,300 during the summer. CT Page 13038
This is her second marriage. She had two children by her first marriage, who currently resides with her. Her first marriage ended after fourteen years in 1988. In the divorce she received the custody of the two children and was awarded $10,000 annual alimony. The youngest daughter is 15 and attends a special education school in Vermont. The oldest daughter is a 1998 Princeton graduate. She is now doing post graduate work on a research fellowship in Atlanta, Georgia. Both children are in need of financial support. The child support she receives from her first husband is sufficient to pay for the tuition for the youngest daughter's special education. The children lived with the plaintiff and the defendant throughout their marriage. The defendant was an active and responsible step-father. For example, while the defendant was attending and residing at the University of Connecticut at Storrs for a graduate degree, the plaintiff would care for the two girls during the week.
After graduating from St. John's University, the defendant taught for nine years in the New York public school system. She is one year short of being eligible for a New York teacher's pension. In 1987 she started working for the Stamford Board of Education where she has been employed for eleven years. She has worked in three different public schools in Stamford, helping Special Education and Gifted students, ages eight through eleven. She is eligible for a Connecticut pension. In addition she can increase her Connecticut pension by buying in for her 9 years New York state service in the approximate lump sum of $70,000. This would increase her eventual Connecticut annual pension from $21,000 to $37,000 when it reaches pay status.
On June 21, 1988, five days before their marriage, the parties executed a prenuptial agreement, Exhibit 1. Both parties signed the prenuptial agreement to protect their respective assets for the benefit of their children issue of their prior marriages. At the time, both parties were employed and each owned a family home in which their children were residing. Each had other assets and obligations which will be discussed later in this opinion. The enforceability of this prenuptial agreement is the major issue in this case.
Plaintiff's Claim for Relief requests the following orders:
1. A mutual and reciprocal waiver of alimony
CT Page 13039
2. Division of personal property in accordance with the Prenuptial Agreement
3. The sale of the current marital home and its division equally between the parties in accordance with the Prenuptial Agreement.
4. The division of personal property in an equitable fashion since not all the personal property was covered in the Prenuptial Agreement
5. Each party will be responsible for the payment of his or her own debts shown in their respective financial affidavits and hold each other harmless for the payment of those debts.
6. Each party will be responsible for the payment of his or her own attorney's fees.
The Defendant requests that the court not accept the Prenuptial Agreement. The Defendant's Claim for Relief requests the following orders:
1. The plaintiff pay to the defendant during his lifetime the sum of $1.00 per year alimony until her death or her remarriage. The alimony is modifiable only if his employment situation changes.
2. The division of the proceeds of the sale of the marital home at 20 Indian Spring Trail, Darien, Connecticut in the following manner: Plaintiff $41,214 and Defendant $318,090. The remaining net proceeds shall be divided equally.
3. One-half interest in the plaintiff's pension plan
4. Transfer of $30,000 to the defendant from the plaintiff's IRA.
5. All other assets will be retained as the parties have set forth in their affidavits.
6. The plaintiff is to pay for and hold the defendant harmless from the outstanding liability owed to Dennis Shaughnessey.
7. The parties will pay for and hold the other harmless from all liabilities listed in their respective financial CT Page 13040 affidavits.
8. The plaintiff shall pay to the defendant $25,000 as attorney fees.
9. The plaintiff will pay for and hold harmless the plaintiff harmless from all joint federal and state income taxes.
In addition to the contested dissolution trial, this court heard simultaneous evidence on the October 9, 1997 Motion for Contempt filed by the defendant. Pendente lite orders were entered in accordance with the parties September 12, 1997 written stipulation. The defendant claims that the plaintiff failed to pay the mortgage payments for the marital home in violation of the September 12, 1997 order. The defendant seeks a finding of contempt and an order that the sums due pursuant to the September 12, 1997 order be paid. She requests that any pendente lite contempt order survive the decree.
The prenuptial agreement was prepared at the defendant's suggestion. She hired her own attorney in February, 1998, who prepared the first draft of the agreement. Multiple drafts were prepared, reviewed and modified by separate attorneys hired by each party. In May, 1988 an issue arose concerning the division of the sale of the prospective marital house. The draft agreement divided the proceeds equally. The defendant wished that the proceeds be divided 2/3 to her and 1/3 to the plaintiff for the first five years until February 26, 1993. She claimed that this split conformed to the equity values of the the two current houses that each party owned individually at that time. These houses were the most significant assets that the parties had prior to their 1988 marriage. In June, 1988 the defendant's house equity was $219,000 and the plaintiff's was $110,000. The parties agreed to the change which is now in paragraph 7C of Exhibit 1. The prenuptial agreement states that the marital house will be divided two-thirds to the defendant and one-third to the plaintiff for the first five years of the marriage and equally thereafter. The agreement was signed in the attorney's office. Both parties were present at the signing along with both attorneys.
The parties agree that they each signed the agreement and that each was represented by a separate attorney. The plaintiff had a New York attorney and lived in New York at the time of the signing of the agreement. He owned a house in Chappaqua, New CT Page 13041 York. At the time of the signing of the agreement the defendant had a Connecticut attorney and lived in Connecticut in a house that she owned. Paragraph 13 of Exhibit 1 is the situs clause which determines whether New York or Connecticut law applies. Since the parties both reside in Connecticut, by plain reading of Exhibit 1, Connecticut law controls the interpretation of this agreement.
All prenuptial agreements executed after October 1, 1995 are subject to the provisions of the Connecticut Premarital Agreement Act, General Statute § 46b-36a-36j. The agreement was signed in 1988 and thus, it is not covered by the Connecticut Premarital Agreement Act. "Nothing in sections 46b-36a to46b-36j, inclusive, shall be deemed to affect the validity of any premarital agreement made 71 prior to October 1, 1995." General Statutes § 46b-36j. Its validity is to be determined in accordance with common law.
 Antenuptial agreements relating to the property of the parties, and more specifically, to the rights of the parties to that property upon the dissolution of the marriage, are generally enforceable where three conditions are satisfied: (1) the contract was validity entered into; (2) its terms do not violate statute or public policy; and (3) the circumstances of the parties at the time the marriage is dissolved are not so beyond the contemplation of the parties at the time the contract was entered into as to cause its enforcement to work injustice.
McHugh v. McHugh, 181 Conn. 482, 485 (1980).
For all prenuptial agreements signed prior to October 1, 1995, the McHugh test is the proper test. Tendler v. Haering, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. FA94 0137428 S (January 2, 1996, Mintz, J.),1996 Ct. Sup. 87, 92; Lord v. Lord, Superior Court, judicial district of New London at Norwich, Docket No. 101197 (January 9, 1995, Teller, J.) 1995 WL 17356.
McHugh indicates that there are a number of factors that the court must weigh in determining whether or not the three prongs of the test have been complied with. The first prong is that the "contract was validly entered into," which brings contract rules into play. The second prong requires "no violation of statute or public policy," which brings general equitable considerations CT Page 13042 into play. The third prong requires a court to determine if the "circumstances at dissolution are not beyond the parties contemplation at the time of signing the prenuptial agreement." This requires the trial court to make a determination similar to that required by General Statutes § 46b-66, the incorporation of a separation agreement into the decree.
The court has gleaned 13 general considerations from McHugh
and its progeny. (1) The contract must be valid at the time it was executed: (2) There must be a knowing waiver of statutory or common law rights: (3) There must be a knowing waiver of the right to a judicial determination: (4) The parties must be aware of their rights in order to make a valid waiver: (5) Each party must fulfill their duty to disclose to the other party: (6) Disclosure of the amount, character and value of their assets must be made by each party: (7) Substantial financial disclosures need not be made if the other party has knowledge of the amount, character and value of the other person's assets: (8) The burden is not on either party to inquire, but on each to inform: (9) The court must consider issues of undue influence and state of mind at the time of signing the agreement: (10) The bargaining position of each party is relevant to the court's consideration: (11) Separate counsel representing each party is required, unless waived: (12) General contract rules such as intent, ambiguity and fraud, must be applied, including the rule that any contractual ambiguity is to be interpreted against the document preparer, and (13) The prenuptial agreement must not violate a statute or public policy.
One of these considerations figued prominently in this case. It is "the duty of each party to disclose the amount character, and value of individually owned property, absent the other's independent knowledge of the same." This disclosure is an essential prerequisite to a valid antenuptial agreement containing a waiver of property rights. McHugh v. McHugh, supra,181 Conn. 486. In the present case, the disclosure of assets attached to the prenuptial agreement is not complete in all its terms. The plaintiff claims that the defendant knew specifically the assets and income of both parties at the time she signed the agreement. The defendant denies this claim. The plaintiff offers evidence, which this court finds credible, that the defendant did have information, adequate to give her full disclosure of the plaintiff's financial circumstances at the time the parties signed the prenuptial agreement. That information was sufficient for her to enter into a valid agreement and to waive her rights. CT Page 13043
Even though information was not disclosed in writing, the "independent knowledge" by a spouse will not void a prenuptial agreeement. Wilkes v. Wilkes, Superior Court, judicial district Stamford-Norwalk at Stamford, Docket No. FA 95 0147168 (January 31, 1997, Harrigan, J,) 1997 Ct. Sup. 448-Y. Wilkes involved two middle aged professionals in a childless twenty year marriage. The wife had extensive legal and business experience. She had been a corporate attorney for a number of years. The parties prepared their own separation agreement five years prior to the dissolution and transferred property pursuant to that agreement. Their CPA reviewed the tax consequences of the asset division. Neither party had an attorney involved in the separation agreement but the wife did get some out of state help from her mother, a matrimonial lawyer. Two years after signing the agreement, the wife filed a pro se dissolution action. The wife later in that action claimed that the 1992 separation agreement was induced by fraud. The trial court found no fraud. She claimed she was under extreme emotional distress at the time of signing the agreement. The court did not agree. Finally she claimed that she was not qualified by background, experience or financial disclosure by her husband to draft the agreement and fairly divide their assets. The court also disagreed.
"For the plaintiff to argue that, because financial affidavits were not prepared in support of their agreement to divide their assets is to allow form exult over substance. The plaintiff examined the defendant's records at his office. He gave her copies of all documents and records she requested . . ." Id. 448LL. "The court is satisfied that the parties did know the nature and value of their respective IRAs and other tax deferred compensation and that the values were roughly equal at the time the party's assets were divided." Id. 448MM. "It would be most inequitable to allow the plaintiff to retain the benefits of the agreement which she prepared and which she now seeks to void."Id. 448MM.
This concept was also discussed in Lord v. Lord, supra, Superior Court, Docket No. 101197 where the validity and enforceability of a prenuptial agreement was at issue. In Lord, the agreement was a one page document typed by the plaintiff wife. Neither sought advice from an attorney in its drafting or before signing it. The agreement stated that the real property owned by the respective parties prior to the date of the agreement would remain as separate property and each party CT Page 13044 forfeited any claim to alimony from the other. The plaintiff was 48, and this was her first marriage. The husband was 50, and this was his second marriage. The agreement contained no recitation that each party was informed of disclosed to the other the nature and amounts of their respective assets or sources of income. No financial statements were attached to the prenuptial agreement. The agreement did not contain a declaration that each party was aware of the nature, amounts and values of the other's assets or estate. The Lord trial court applied the McHugh test. The trial court found that no effort was made by the defendant husband at, or shortly prior to the signing of the agreement, to fully inform the plaintiff of the amount, character and value of his assets.
"The defendant has simply not met his burden of showing that the plaintiff at the time of signing of the agreement, had such independent knowledge of the amount, character and value of his assets, as would be sufficient to conclude that the wife's waiver of her statutory rights was intelligent, knowing and voluntary."Id. 486-487. There was no "index pendant knowledge." There was no adequate waiver of statutory or common law rights. The burden is not on each party to inquire, but on each to inform. The agreement was held unenforceable.
As a corrollary to McHugh, in the event the court determines the prenuptial agreement to be valid, and the prenuptial agreement does not cover all issues, those issues not covered in the prenuptial agreement can be contained in a court order along with the incorporation of the terms of the valid prenuptial agreement. In Tendler v. Haering, supra, Superior Court, Docket No. 137428, the court found the agreement signed four months after the date of the marriage and a modification agreement signed years after the marriage both valid under McHugh. "The Agreement and Modification Agreement do not cover all of the issues in this case. For the issues not covered by said agreements, the court must look to Connecticut law. The court has considered all of the criteria of 46b-81 and 46b-82 and 46b-62 of the General Statutes together with all of the evidence and the case law." Id. InTendler the court, pursuant to the agreements, transferred substantial amount of assets. Its orders conformed totally to the two agreements. In addition, the court entered orders concerning a $100,000 note to Key Technologies. Key Technologies was not part of the post nuptial and/or modification agreements. This asset was held to be subject to the court's power of distribution despite the finding that the agreements were valid and that the court enforced those agreements. CT Page 13045
In this case, the court finds that the defendant knew that the plaintiff had been employed since 1960 by IBM. Although the exact current valuation of the pension was not included in the financial disclosure attached as Schedule A to Exhibit 1, the fact of the pension was disclosed. The defendant knew the IBM pension was valued in three components as of December 31, 1986 at $50,579 since that was disclosed in Schedule A Exhibit 1. The relative value of the two parcels of real properties were such, that their combined equity was two/thirds defendant and one/third plaintiff The parties intended to sell their respective houses and to buy a new marital house to be owned jointly by the parties. It was proposed at the time of the prenuptial agreement, that the new marital house would then be owned, two/thirds by the defendant and one/third by the plaintiff, thus equating the same percentage of the value of the two separate houses. Although the equity in the two family homes was not stated in Exhibit 1, each party testified that they knew the exact equity values of the time they signed Exhibit 1 and the relationship of these two values was 2/3 — 1/3. At the December, 1988 closing on the marital home at 20 Indian Spring Trail, Darien, Connecticut, their lawyer inadvertently prepared a fifty-fifty deed. The parties contributed cash to the marital home purchase in the approximate division of, defendant 2/3 and plaintiff 1/3. A little over a month later, at the request of the defendant, a corrective deed was signed by the parties placing the title, two thirds and one third, as set forth in the prenuptial agreement. The defendant requested this corrective deed to conform to the prenuptial agreement. Although the plaintiff's 1988 earnings from IBM were not disclosed in Exhibit 1, the evidence establishes that the defendant knew what he earned. She reviewed his last 4 years tax returns prior to signing Exhibit 1. Certain assets worth less than $1,000 were not disclosed in Exhibit 1, such as a checking accounts. The parties joint assets in June 1988 were in excess of $380,000 and assets under $1,000 are thus de minimis.
The defendant is claiming lack of adequate financial disclosure. The court finds she has not met her burden of proof In reaching this conclusion the court has considered the following: 1. IBM stock price fell on Black Monday October 17, 1987, a fact she knew. 2. The IBM pension value of less than $51,000 was earned by the plaintiff over his then 27 year employment and 3. The increase in value of pension from December 1, 1996, when she knew the value, to June 21, 1988 would be de minimis based on prior performance and the fall in the stock CT Page 13046 market.
The defendant carefully drafted the agreement, discussed issues with her own separate counsel and was fully aware of the amount, character and value of the plaintiff's assets including the pension and real property. It was only in this lawsuit did the defendant first raise the claimed inadequacy of the financial disclosure in Exhibit 1. Applying the standards of McHugh, the agreement is valid. The defendant has failed to sustain her burden of proof that she was subject to duress or undue influence when she signed the June 21, 1988 Prenuptial Agreement.
The court, after considering General Statutes § 46b-62, § 46-81 and § 46-82 and O'Neill v. O'Neill.13 Conn. App. 300 (1988), the claims of law and fact of the parties, the evidence and the testimony of the parties, enters the following orders:
1. A decree dissolving the marriage will enter on the grounds of irretrievable breakdown.
2. Exhibit 1, the Prenuptial Agreement dated June 21, 1988, is declared to be valid and enforceable. The court finds that it was valid and enforceable under all three prongs of McHugh at the time of its execution. The court finds that the financial circumstances of the parties have not changed so drastically as to render said agreement invalid and nonenforceable at the time of the entry of the decree. The court finds the agreement fair and equitable on June 21, 1988 and at the time of trial. The agreement is incorporated by reference in the decree as per General Statutes § 46b-66.
3. The parties will retain as their own property that which they brought into the marriage as provided for and Schedules A and B of the Prenuptial Agreement.
4. Neither party will pay periodic alimony to the other. Paragraphs 3, 4 and 6 of Exhibit 1 waived the parties' right to seek an award of periodic alimony upon the dissolution of their marriage.
5. The plaintiff has a civil damage claim for injuries that occurred in April, 1997 in New York City. This damage claim is property. Raccio v. Raccio, 41 Conn. Sup. 115 (1987): TYC v. Tyc, 40 Conn. App. 562 (1996). The Prenuptial Agreement is CT Page 13047 silent on this type of property. The defendant is awarded 10% of the net amount from said claim paid to the plaintiff, after payment of attorney fees, costs of suit and uninsured medical bills. In the event a loss of consortium claim is brought by the defendant, the plaintiff is awarded 10% of the net amount from said claim paid to the defendant after payment of attorney fees, costs of suit and uninsured medical bills.
6. The plaintiff is awarded all right, title and interest in and to real property at 1301 Lucile, Los Angeles, California owned jointly with his son. The real property has a negative equity value. The plaintiff will and pay for and hold the defendant harmless from all debts, claims and liabilities therefrom. The Prenuptial Agreement is silent on this issue.
7. The plaintiff is awarded the 1967 Irwin boat, 29 shares of IBM stock and the 1996 Ford Explorer automobile. The defendant is awarded the 1993 Toyota automobile. Each shall retain their own bank accounts. Except for the 1967 Irwin boat the Prenuptial Agreement is silent in this regard.
8. The marital home having been listed for sale at the commencement of trial and sold on June 18, 1998 prior to the last day of trial for $1,195,000, the proceeds therefrom, after the payment of the balance of the outstanding mortgages, real estate taxes, broker commissions, real estate legal fees, $4,049 repair payment to the defendant and other normal closing costs, will be divided equally by the parties pursuant to the Prenuptial Agreement. This order is consistent with Paragraph 7C of the the Prenuptial Agreement.
9. Each of the parties shall be responsible for the payment of his or her own debts shown on their respective financial affidavits and hold each other harmless therefrom. The plaintiff is to pay the liability to Dennis Shaughnessey and the parties are to sign and provide documents to maximize any insurance claim therefore.
10. The prenuptial agreement is silent as to attorney fees. The court, therefore, orders that the plaintiff pay to the defendant the sum of $10,000 as an allowance toward attorney's fees.
CT Page 13048
11. The personal property, other than set forth in the Prenuptial Agreement, owned by the parties shall be divided equitably. This court retains continuing jurisdiction to enter all orders concerning the itemizing, appraisal evaluation, and division of said items of personal property including the enforcement of the April 22, 1998 stipulation of the parties. The court reserves the right to hear additional evidence on the division of personal property.
12. Each party shall own as their own respective asset free and clear of any claims of the other party, all right, title and interest that they have in his or her own pension, IRA, 403B plan, annuity and/or retirement plans including those listed in his and her respective financial affidavits. The order is consistent with the Prenuptial Agreement.
13. The plaintiff shall pay, for and hold the defendant harmless, with respect to any tax assessments, deficiencies, interest or penalties resulting from any joint federal, state, or local income tax returns signed by the parties, which assessment, deficiency, interest and/or penalties are attributed solely to the plaintiff's action. The Prenuptial Agreement is silent on this issue.
14. The defendant shall pay for, and hold the plaintiff harmless, with respect to any tax assessments, deficiencies, interest or penalties resulting from any joint federal, state, or local income tax returns signed by the parties, which assessment, deficiency, interest and/or penalties are attributed solely to the defendant's actions. The Prenuptial Agreement is silent on this issue.
15. The court having heard the evidence hereby renders the following orders on the motion for contempt filed by the defendant dated October 9, 1997. The court finds that the plaintiff is in violation of the September 12, 1997 court order. This finding and order is in the nature of Pendente lite support. Pendente lite support was not addressed in the Prenuptial Agreement. Both parties continue to have a claim and interest in and to the family house pursuant to the Prenuptial Agreement. The stipulation of the parties, dated September 12, 1997, although entered as order of the court, is still an agreement of the parties. By that stipulation the defendant was obligated to pay the second mortgage on the house and the plaintiff was obligated to CT Page 13049 pay the first mortgage. The court finds that the plaintiff had income in 1996 and 1997, in excess of $100,000 per year, despite his unemployment, which was sufficient to pay the first mortgage. The court finds that the plaintiff has failed to pay the amount of $27,500 on said order of September 12, 1997. The court finds that the plaintiff thus owes the defendant $27,500. The plaintiff is to pay to the defendant the sum of $2,000 per month plus 7% interest monthly on said unpaid $27,500. The first payment will be December 1, 1998. Interest will run from February 1, 1998. This court will retain continuing jurisdiction over any further order. The court does not find the plaintiff in contempt at this time and reserves jurisdiction to do so in the event, that said periodic payments of principal and interest are not timely made. This order will survive the decree.
16. The parties will execute all documents and provide all documents and information necessary to put into full force and effect the orders of this court.
17. The plaintiff s counsel will prepare the judgment file for submission and approval by the defendant's counsel.
BY THE COURT
KEVIN TERNEY, JUDGE